**SIGNED this 12th day of March, 2012**

_____
John C. Cook
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Lew Eric Winters** | ) | **No. 12-10614** |
| | ) | **Chapter 13** |
| **Debtor** | ) | |

# M E M O R A N D U M

This case is before the court on the Motion to Dismiss filed by Southern Heritage Bank on February 13, 2012. The motion asserts that, as a result of a personal guaranty, the debtor owes an unsecured debt to Southern Heritage that exceeds the unsecured debt limit of $360,475 established by 11 U.S.C. § 109(e) for an individual to be eligible for chapter 13 relief. Having considered the motion, response, arguments of counsel, and supplemental briefs, the court will grant the motion.

On or about February 27, 2002, and May 12, 2011, the debtor executed guaranties of certain obligations owed to Southern Heritage by Ocoee River Properties, LLC, and Ocoee River Transport, Inc., respectively. The parties have stipulated that the aggregate amount of guaranteed

indebtedness is just over $2 million, and there is no question that the guaranty obligation is unsecured to an extent in excess of $360,475.[1] The guaranties provide, in pertinent part:

> [T]he Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows: . . . .[T]he Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). . . .
>
> The Undersigned further acknowledges and agrees with Lender that:
>
> 1.  1. No act or thing need occur to establish the liability of the Undersigned hereunder . . . .
>
>     . . . .
>
> 3.  If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand of notice thereof.
>
>     . . . .
>
> 7.  *. . . . The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage of security interest securing Indebtedness, whether of not the liability of Borrower or any*

---

[1] Southern Heritage has filed a proof of claim asserting that the guaranty obligation is partially secured by the debtor's residence but constitutes an unsecured claim to the extent of $1,874,627.

> *other obligor* for such deficiency is discharged pursuant to statute or judicial decision. The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.
>
> . . . .
>
> 11.   The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. *Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.*

Mot. to Dismiss, Exs. 1, 2 (emphasis added).

On January 18, 2012, Ocoee River Properties, LLC, and Ocoee River Transport, Inc., filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code. Their schedules of assets and liabilities, of which the court takes judicial notice with the consent of the parties, indicate that Ocoee River Properties is insolvent to the extent of approximately $4.2 million and that Ocoee River Transport is insolvent to the extent of approximately $8.5 million. The loan and security documents attached to the proofs of claim filed by Southern Heritage in the chapter 7 cases, of which the court also takes judicial notice with the consent of the parties, state that events of default include the insolvency of the borrowers.

On February 7, 2012, the debtor in this case filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. On February 21, 2012, the debtor filed a Schedule F - Creditors Holding Unsecured Nonpriority Claims that lists a debt to Southern Heritage as contingent, unliquidated, and disputed in the amount of $1.

In determining eligibility for relief under chapter 13, the debtor's schedules are the starting point in the inquiry. *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751 (6th Cir. 1985). "A debtor's good faith assertion as to how much is owed is ordinarily accepted at face value and should 'normally' be determined by the debtor's schedules." *In re Odette*, 347 B.R. 60, 62 (Bankr. E.D. Mich. 2006). Sometimes, however, a debtor's characterization of its debts is simply mistaken, and that mistake can be readily ascertained without the need for a lengthy or involved evidentiary hearing. The question then becomes whether the debtor's schedules are nevertheless conclusive for purposes of determining eligibility. The court does not believe that *Pearson* so holds. Rather, in determining a debtor's eligibility for chapter 13 relief, a bankruptcy court should be guided by the following principles, which one bankruptcy court in this circuit derived from *Pearson*:

> (1) the schedules are unquestionably the starting point of the eligibility inquiry, but may also be the ending point under certain circumstances; (2) the word "normally" used with respect to reliance on schedules implies exceptions for the proper application of a court's discretion so long as the determination focuses on determining debts "on the date of filing," and (3) given the need for parties in interest to know § 109(e) eligibility early in a case, the eligibility determination should not depend on the claims allowance process (based on the Sixth Circuit's quoting with approval a case that states that the court considers debts as they exist at the time of filing, "not after a hearing") and turn into separate satellite litigation that dominates and delays the Chapter 13 proceedings.

*In re Perkins*, No. 08-33352, 2009 WL 2983034, at *2 (Bankr. N.D. Ohio Sept. 14, 2009) (citations omitted). When a debtor files his schedules in good faith, a court may still look beyond the schedules to ascertain whether the debts have been improperly scheduled as contingent or unliquidated so long as the determination can be readily made without a lengthy and involved evidentiary hearing. *Id.*; *In re Smith*, 365 B.R. 770, 780-81 (Bankr. S.D. Ohio 2007); *In re Mannor,* 175 B.R. 639, 641-42 (Bankr. E.D. Mich. 1994). Here, the court can make that determination

based on the undisputed facts and the language contained in the guaranty agreements that give rise to the obligation in question.

Section § 109(e) of the Bankruptcy Code provides that only noncontingent, liquidated debts are considered in applying the chapter 13 debt limits. There is no question that the debtor's obligation to Southern Heritage is liquidated because the debt is "subject to 'ready determination and precision in computation of the amount due.'" *Fostvedt v. Dow (In re Dow)*, 823 F.2d 305, 306 (9th Cir. 1987) (citation omitted); *see Pearson*, 773 F.2d at 754 ("the bankruptcy courts agree that a claim is liquidated if its amount is readily ascertainable"). Moreover, the court holds that the obligation is "noncontingent."

"[T]he rule is clear that a contingent debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" *Dow*, 823 F.2d at 306 (quoting *Brockenbrough v. Comm'r*, 61 B.R. 685, 686 (W.D. Va. 1986) (citation omitted)). Even where a guaranty is absolute and unconditional on its face, the debt is contingent unless and until the principal obligor defaults, because "[a]n absolute guaranty is an 'unconditional undertaking on the part of the guarantor that he will pay the debt or perform the obligation immediately upon the debtor's default without any necessity to first exhaust the principal.' Thus, the only conditional precedent . . . under the guaranties is a default by . . . the original obligors, under their respective notes." *In re Taylor*, No. 08-00526-JDP, 2008 WL 2945621, at *4 (Bankr. D. Idaho July 25, 2008). As one appellate court has recently explained, in reversing the bankruptcy court's holding that a guaranty obligation was noncontingent due to language making it absolute and unconditional:

> The bankruptcy court erred because a guaranty is, by its very nature, a contingent liability. "The classic example of a contingent debt is a guaranty be-

>   cause the guarantor has no liability unless and until the principal defaults." Here, it is undisputed that the required contingency—default by the primary obligor—did not occur. Even though the guaranties contain language suggesting that the guarantor's liability is "absolute," "unconditional," or even "joint and several," this does not alter the secondary nature of guarantor liability. "A guaranty, in its technical sense, is collateral to and made independently of, the principal contract which it guarantees, and the guarantor's liability is secondary rather than primary." The absolute or unconditional nature of a guaranty only becomes relevant once the primary obligor is in default.

*Glaubitz v. Grossman*, No. 10-C-927, 2011 WL 147931, at *1 (E.D. Wis. Jan. 18, 2011).

There is no question that Ocoee River Properties, LLC, and Ocoee River Transport, Inc., were in default at the time this chapter 13 case was commenced, because they were insolvent as of the date they filed their chapter 7 petitions, which was less than three weeks before the chapter 13 petition was filed. Moreover, under the broad agreements and waivers contained in the guaranties, the debtor's liability was not conditioned on the occurrence or happening of any other extrinsic event. Specifically, because the debtor agreed that Southern Heritage need not resort to the collateral securing the principal obligations before enforcing the guaranties, the existence of that collateral does not render the guaranty obligation contingent.[2]

Accordingly, the debtor owes a liquidated, noncontingent, unsecured debt to Southern Heritage in excess of $360,475.00, and so the debtor is not eligible to be a debtor under chapter 13 of the Bankruptcy Code. 11 U.S.C. § 109(e). For the foregoing reasons, the court will enter a

---

[2] For example, in *In re Wilson*, 9 B.R. 723 (Bankr. E.D.N.Y. 1981), the court held that the existence of collateral securing the principal indebtedness did not make the debt contingent in light of the lender's contractual right to enforce the guaranty without exhausting its rights with respect to collateral: "Notwithstanding the fact that the creditor may at some time in the future decide to release the guarantor from some or all of the debt by applying the collateral does not alter the fact that as of the date of the filing, the debtor was liable for the full amount of the claim without regard to the collateral." *Id.* at 726.

separate order granting the Motion to Dismiss filed by Southern Heritage Bank on February 13, 2012.

# # #